UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

EDWARD B. KIRKWOOD,

       Plaintiff,

  v.                                                                                  22-CV-703-LJV
                                                                                     DECISION & ORDER
BUFFALO & ERIE COUNTY NAVAL &
MILITARY PARK, *et al.*,

       Defendants.
_____

On September 16, 2022, the *pro se* plaintiff, Edward Kirkwood, commenced this action against the Buffalo & Erie County Naval & Military Park ("Buffalo Naval Park") and Paul Marzello, a Buffalo Naval Park employee. Docket Item 1. He raises claims under Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act of 1967 ("ADEA"), the Americans with Disabilities Act of 1990 ("ADA"), and the New York State Human Rights Law ("NYSHRL"). *Id.*

On January 20, 2023, the defendants moved to dismiss the complaint on the grounds that Kirkwood's claims are time barred. Docket Item 7. On January 25, 2023, Kirkwood filed a "notice to respon[d]," Docket Item 10, and on February 23, 2023, the defendants replied in further support of the motion to dismiss, Docket Item 12. Kirkwood then filed another response to the motion to dismiss, Docket Items 13-14, and on March 16, 2023, the defendants again replied in further support of the motion to dismiss, Docket Item 17. Kirkwood then filed two additional responses to the motion to dismiss, Docket Items 18 and 19, as well as "evidence of retaliation," Docket Item 20.

For the reasons that follow, the defendants' motion to dismiss will be granted unless Kirkwood files an amended complaint or otherwise demonstrates either that his claims are not time barred or that for some reason this Court can consider his untimely claims.

## **FACTUAL BACKGROUND**[1]

Kirkwood worked at Buffalo Naval Park from 1987 until he was fired in May 2019. Docket Item 1 at 10-13. He says that during his time there, he was subjected to "neglect, racism, and numerous other illegal and immoral practices." *Id.* at 10.

For example, Kirkwood says that in December 2017, he was "put in charge of most of the responsibilities" in connection with a "party for the commissioning of the new Little Rock" ship.[2] *Id.* at 10. "Many of the white employees at the [Buffalo] Naval Park

---

[1] Unless otherwise noted, the following facts are taken from the complaint, Docket Item 1. On a motion to dismiss under Rule 12(b)(6), the Court "accept[s] all factual allegations as true and draw[s] all reasonable inferences in favor of the plaintiff." *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016).

The parties also have submitted Kirkwood's charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), his complaint with the New York State Division of Human Rights ("NYSDHR"), and other documents from Kirkwood's interactions with the EEOC and NYSDHR. *See* Docket Item 1 at 7; Docket Item 7-2; Docket Item 7-3; Docket Item 7-4; Docket Item 7-5; Docket Item 10 at 4-10. Because those documents are subject to judicial notice, the Court considers them in deciding this motion. *See, e.g.*, *Zabar v. N.Y.C. Dep't of Educ.*, 2020 WL 2423450, at *2 n.4 (S.D.N.Y. May 12, 2020) (collecting cases finding that "a court may take judicial notice of the records and reports of [] relevant administrative bodies" in cases "where exhaustion of administrative remedies is a prerequisite to bringing suit").

[2] Kirkwood also alleges that he was discriminated against in December 2015 because his "personnel evaluation did not start until [then]," which "do[es] not match [his] history." Docket Item 1 at 3-4.

referred to it as a 'whites only' [p]arty." *Id.* Kirkwood was not "allowed to bring guests []on the ship, despite numerous other white employees being able to." *Id.* "By the end of the party, a derogatory term was written on one of the museum's bathroom stalls." *Id.* Kirkwood was asked to clean that stall "nearly a year later" because "there was going to be an investigation" and Kirkwood's supervisor, John Branning, "didn't want it to affect [Buffalo Naval] Park's image." *Id.* Branning "was the perpetrator behind most of the acts taken during and pertaining to this party." *Id.*

After the investigation concluded in October 2018, Kirkwood was "forced [] to sign a document [that he] was unable to read by [himself]" because of a "learning disability." *Id.* Although he "request[ed] a reading assistant for the document, [he] was told [that] if [he] didn't sign" the document, he "would no longer have a job." *Id.* Kirkwood also "was unable to seek any legal counsel" before signing the document. *Id.* Kirkwood's coworkers were "completely aware of [his] learning disability and took advantage of it to get what they wanted." *Id.*

Kirkwood also faced several "unsafe working condition[s]" at Buffalo Naval Park. *Id.* at 11. On one occasion, Branning "made [Kirkwood] clean asbestos without any equipment or training." *Id.* Kirkwood had to "buy [his] own [equipment] with the promise of a refund, which was only pa[id] in half with Canadian money." *Id.* He also "was forced to work parties where children were exposed to drinking." *Id.*

Kirkwood suffered several work-related injuries at Buffalo Naval Park as well. *See id.* On October 19, 2017, for example, he "slipped in the showers at work and ended up breaking one of [his] toes." *Id.* But Branning "would not let [Kirkwood] take any time off" after that injury. *Id.*

3

About a year-and-a-half later, on March 27, 2019, Kirkwood "fell through the floorboards on the submarine" at Buffalo Naval Park. *Id.* "Multiple employees, including [Branning,] saw [Kirkwood] fall," but no one "filed an accident report." *Id.* On April 30, 2019, Kirkwood had to "call off of work" because of the injury. *Id.* And "[o]n the weekend after April 30[, 2019]" Kirkwood "was feeling very ill still and could not work" at an "unscheduled party" at Buffalo Naval Park. *Id.* at 8.

Although Kirkwood saw a doctor after his March 2019 injury and provided a doctor's note to Buffalo Naval Park, *id.* at 8, Marzello "refused to look at [his] doctor's" note, *id.* at 11. On May 6, 2019, Kirkwood was fired. *Id.* Kirkwood was told he was fired "for not calling in" sick, "even though [he] called in beforehand." *Id.* at 8. Buffalo Naval Park then "lied about the day [Kirkwood] was fired in order to make sure [he] did not receive unemployment benefits." *Id.* at 11.

The day after he was fired, Kirkwood contacted the EEOC. *See* Docket Item 10 at 2. Shortly after that, he "received [F]orm 290A," which he then completed and "hand delivered to [the] Buffalo local office" of the EEOC on May 14, 2019. *Id.* After Kirkwood submitted the completed form, the EEOC "start[ed] to ignore [him]," and he "was told to keep in mind that the [EEOC] process takes time." *Id.*

In August 2021, Kirkwood filed a discrimination complaint with the NYSDHR,[3] *see* Docket Item 7-4; Docket Item 13 at 7, and on December 16, 2021, he filed a charge

---

[3] Kirkwood apparently signed that complaint on August 10, 2021, and it was received by the NYSDHR two days later. *See* Docket Item 7-4 at 3, 7. As discussed below, Kirkwood's claims appear to be untimely regardless of whether he filed his complaint on August 10 or August 12.

4

of discrimination with the EEOC, see Docket Item 7-2.  The NYSDHR and the EEOC both dismissed Kirkwood's claims as untimely.  See Docket Item 7-3; Docket Item 7-5.

## LEGAL PRINCIPLES

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell. Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

## DISCUSSION

**I.    TIMELINESS**

"Plaintiffs asserting claims under Title VII, the ADEA, or the ADA must first file a complaint with the [EEOC] or an equivalent state agency within 300 days of the allegedly discriminatory action." *Gindi v. N.Y.C. Dep't of Educ.*, 786 F. App'x 280, 282 (2d Cir. 2019) (summary order); see 42 U.S.C. § 12117(a) (ADA); 42 U.S.C. § 2000e-5(e)(1) (Title VII); 29 U.S.C. § 626(d)(1) (ADEA); see also *Davis-Garett v. Urban Outfitters, Inc.*, 921 F.3d 30, 42 (2d Cir. 2019) ("As for the permissible temporal scope of

---

Kirkwood also apparently filed a second complaint with the NYSDHR in May 2022.  Docket Item 10 at 9.  Because that complaint was filed after his first NYSDHR complaint and his EEOC charge, it does not affect the timeliness of his claims.

5

a federal claim of employment discrimination, generally if the plaintiff has initially filed an administrative claim in a state whose laws prohibit such discrimination, the limitations period for filing an action is 300 days after the alleged unlawful practice."). "A claim under each of these three statutes is time[ ]barred if the plaintiff does not" do so. *Verne v. N.Y.C. Dep't of Educ.*, 2022 WL 4626533, at *6 (S.D.N.Y. Sept. 30, 2022); *see Jiles v. Rochester Genesee Reg'l Transp. Auth.*, 217 F. Supp. 3d 688, 691 (W.D.N.Y. 2016) ("The statutory filing period operates as a statute of limitations; therefore, the failure to file an administrative complaint within the required time period will bar a plaintiff's action.").[4]

Kirkwood filed a complaint with the NYSDHR in August 2021 and a charge of discrimination with the EEOC on December 16, 2021.[5]  Docket Item 7-2; Docket Item 7-

---

[4] "While discrete claims of discrimination and retaliation must be brought within the 300-day limitations period to be actionable, a different rule applies with regard to hostile work environment claims." *Zoulas v. N.Y.C. Dep't of Educ.*, 400 F. Supp. 3d 25, 50 (S.D.N.Y. 2019).  For those claims, "the entire time period of the hostile environment may be considered by a court for the purposes of determining liability" so long as "any act contributing to the hostile work environment claim falls within the 300-day period." *Id.*  But because Kirkwood challenges conduct that occurred in 2019 at the latest, the "different rule" that applies to hostile work environment claims does not render his claims timely.

[5] The NYSDHR complaint indicates that Kirkwood signed the complaint on August 10, 2021, and that the NYSDHR marked the complaint as "received" two days later.  *See* Docket Item 7-4 at 3, 7.  Because Kirkwood's federal claims challenge conduct that occurred far more than 300 days before either August 10, 2021, or August 12, 2021, the Court need not pinpoint the precise date on which Kirkwood filed his NYSDHR complaint.  *See Wu v. Good Samaritan Hosp. Med. Ctr.*, 815 F. App'x 575, 579 (2d Cir. 2020) (summary order) (declining to resolve "whether [a] charge is 'filed' on the date that the plaintiff faxes the complaint to the EEOC or on the date that the EEOC officially stamps the complaint 'received'" because the plaintiff's "claims accrued well outside the limitations window" either way); *but see Pearson v. City of New York*, 2021 WL 2894776, at *4 (S.D.N.Y. July 9, 2021) (noting that "[d]istrict courts in this Circuit[] routinely hold" that a charge is filed when it is stamped "received" and using the date the "administrative charge was stamped as received by the [NYSDHR]" as the "operative date of 'filing'").  And while Kirkwood alleges in his complaint that he filed his NYSDHR

4.  Because "a complaint filed with the NYSDHR is considered to be cross-filed with the EEOC," *Jiles*, 217 F. Supp. 3d at 691 (citation and internal quotation marks omitted), Kirkwood's claims would be timely if they relate to conduct that occurred no more than 300 days before he filed his August 2021 complaint with the NYSDHR.  *See Pearson v. City of New York*, 2022 WL 4569476, at *3 (S.D.N.Y. Sept. 29, 2022) (using "the date of filing with the NYSDHR [as] the date of filing with the EEOC for purposes of the statute of limitations"); Docket Item 7-4 at 7 (Kirkwood's NYSDHR complaint, which notes that Kirkwood "underst[ood] that [he was] also filing [his] employment complaint with the [EEOC] under the [ADA], Title VII . . ., and[] the [ADEA]").  But Kirkwood's claims all relate to conduct that occurred before or when his employment was terminated in May 2019 and therefore more than two years before he filed his NYSDHR complaint.  And for that reason, those claims appear to be time barred.  *See Gindi*, 786 F. App'x at 282.

Kirkwood maintains that his claims nevertheless are timely because he submitted Form 290A to the EEOC in May 2019.  *See* Docket Item 10 at 2; Docket Item 13 at 2.  But Form 290A is not a charge of discrimination, and Kirkwood's submission of that form does not make his claim timely.  And a Supreme Court case finding that another type of form was such a charge illustrates the point.

In *Federal Express Corp. v. Holowecki*, 552 U.S. 389 (2008), the Supreme Court considered whether an "intake questionnaire" that a plaintiff completed and filed with the EEOC was a charge of discrimination sufficient under the ADEA.  *See id.* at 395-96.  The Court concluded that the completed form was a charge of discrimination because it

---

complaint on August 12, 2020, Docket Item 1 at 3, that appears to be a typo based on the documents cited above.  In any event, Kirkwood's federal claims all relate to conduct that occurred more than 300 days before August 12, 2020.

provided "the information required by the regulations" and could be "reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee." *Id.* at 402.  In other words, the Court held that a plaintiff files a charge of discrimination when, "from the standpoint of an objective observer," the plaintiff's filing asks "the agency to activate its machinery and remedial processes."  *Id.*  Although the Court in *Holowecki* decided only the timeliness of the plaintiff's ADEA claim, courts have applied *Holowecki* in evaluating the timeliness of ADA and Title VII claims as well.  *See, e.g.*, *Brown v. City of New York*, 2013 WL 3789091, at *7-9 (S.D.N.Y. July 19, 2013); *Price v. City of New York*, 797 F. Supp. 2d 219, 224-26 (E.D.N.Y. 2011).[6]

Kirkwood did not file an intake questionnaire like the one in *Holowecki*; instead, he completed Form 290A, a "pre-charge inquiry."  *See* Docket Item 10 at 5-7.  Other courts have concluded that Form 290A is not a formal charge of discrimination within the meaning of *Holowecki*.  *See, e.g.*, *Kindred v. Memphis Light Gas & Water*, 2021 WL 6752163, at *5 (W.D. Tenn. Dec. 6, 2021), *adopted*, 2022 WL 989478 (W.D. Tenn. Mar. 31, 2022), *aff'd*, 2023 WL 3158951 (6th Cir. Feb. 27, 2023); *Herrera v. Di Meo Bros., Inc.*, 529 F. Supp. 3d 819, 827-28 (N.D. Ill. 2021).  And this Court agrees.

---

[6] In *Holowecki*, the Supreme Court cautioned that "employees and their counsel must be careful not to apply rules applicable under one statute" within EEOC jurisdiction "to a different statute" involving the EEOC "without careful and critical examination." *Holowecki*, 552 U.S. at 393.  But as mentioned above, other courts have looked to *Holowecki* to evaluate the sufficiency of a charge of discrimination under the ADA and Title VII.  *See, e.g.*, *Price*, 797 F. Supp. 2d at 224-26 (comparing "the regulations that apply to both the ADA and Title VII" with "the ADEA regulations at issue in *Holowecki*" before concluding that "the permissive standard announced in *Holowecki* appl[ies] here").  This Court therefore applies *Holowecki* in deciding whether Kirkwood's completed Form 290A was a charge of discrimination for each of his federal claims.

First, unlike the completed form in *Holowecki*, Form 290A is not a charge of discrimination because it cannot be "reasonably construed as a request for the [EEOC] to take remedial action." *Holowecki*, 552 U.S. at 402. Indeed, Form 290A includes several explicit warnings—repeated on the bottom of each page—that it is "not a charge of discrimination." *See, e.g.*, Docket Item 10 at 5 (warning that "**THIS PRE-CHARGE INQUIRY IS NOT A CHARGE OF DISCRIMINATION**" (emphasis in original)). Moreover, the form explicitly advises anyone completing it that he or she still "must file a charge of job discrimination within 180 days from the day [he or she] knew about the discrimination, or within 300 days from the day [he or she] knew about the discrimination if the employer is located where a state or local government agency enforces job discrimination laws on the same basis as the EEOC's laws." *Id.* To underscore the point, Form 290A advises that if the person completing the form "would like to file a charge of discrimination immediately, [he or she should] contact the EEOC office on the cover letter." *Id.* Finally, Form 290A notes that its "principal purpose" is "to solicit information about claims of employment discrimination, determine whether the EEOC has jurisdiction over those claims, and provide charge counseling, if appropriate." *Id.*

"In *Holowecki*, the Supreme Court explained that similar language included in the intake-questionnaire form used by the EEOC in 2001 did not 'give rise to the inference that the employee requests action against the employer' and 'in fact suggested the opposite: that the form's purpose was to facilitate pre[-]charge filing counseling and to enable the agency to determine whether it has jurisdiction over potential charges.'" *Kindred*, 2023 WL 3158951, at *5 (alterations and internal quotation marks omitted)

9

(quoting *Holowecki*, 552 U.S. at 405).   But the Court concluded that the intake questionnaire was an adequate charge of discrimination in *Holowecki* because the plaintiff  "supplemented" the completed questionnaire with a "detailed six-page affidavit"—an affidavit explicitly "ask[ing] the agency to please force Federal Express to end their age discrimination plan so we can finish out our careers absent the unfairness and hostile work environment created" by the company.  *See id.* at 405 (alterations and internal quotation marks omitted); *see also Kindred*, 2023 WL 3158951, at *5 ("[T]he Court deemed the intake form in [*Holowecki*] to be part of the charge only because it was supplemented with an affidavit in which the employee expressly requested that the EEOC take action.").  In other words, the Court found that a request for EEOC action added to the intake questionnaire turned that form into a charge of discrimination.

Here, by contrast, Kirkwood's completed Form 290A did not include any request for action by the EEOC.  On the contrary, the form includes only the information requested by the EEOC, including Kirkwood's personal information, the alleged bases of discrimination, and the names of individuals treated better or worse than Kirkwood.  *See* Docket Item 10 at 5-6.  Moreover, and as noted above, the form includes several explicit warnings that it is *not* a charge of discrimination.  *See id.*  Based on those warnings, and based on the absence of any request for action similar to that in the addendum in *Holowecki*, Kirkwood's completed Form 290A cannot be reasonably construed as a request for the EEOC "to take remedial action to protect [his] rights or otherwise settle a dispute between [him] and [Buffalo Naval Park]."  *See Holowecki*, 552 U.S. at 402; *see also Kindred*, 2023 WL 3158951, at *5 ("[G]iven the pre-charge inquiry form's express statement that it does not constitute a charge of discrimination and its

design as a tool for determining whether an employee's allegations are covered by employment-discrimination laws, it cannot be considered a charge under the ADEA."); *Shaukat v. Mid Atl. Pros., Inc.*, 2021 WL 5743909, at *4 (D. Md. Nov. 30, 2021) ("[T]he explicit language in [the plaintiff's] pre-charge inquiry form stating that it is not a charge of discrimination, and that other steps need to be taken in order to file such a charge, precludes a reasonable construction of the form as a request that the EEOC take remedial action.").

Because Kirkwood's Form 290A was not a charge of discrimination, and because Kirkwood filed his complaint with the NYSDHR more than two years after the termination of his employment, his claims are untimely on their face. But because exhaustion is "a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling," *see Francis v. City of New York*, 235 F.3d 763, 767 (2d Cir. 2000), Kirkwood's claims may nevertheless be viable if some equitable defense excuses his failure to timely exhaust, *see Fowlkes v. Ironworkers Loc. 40*, 790 F.3d 378, 386 (2d Cir. 2015).[7]

---

[7] Courts have waived administrative exhaustion requirements in other circumstances, including when administrative exhaustion would have been futile. *See, e.g.*, *Lerer v. Spring Valley Fire Dep't, Inc.*, 2021 WL 1425238, at *5 (S.D.N.Y. Apr. 14, 2021); *see also Ferguson v. Park Slope Food Co-op*, 2023 WL 2462726, at *5 (E.D.N.Y. Mar. 10, 2023) (noting that courts also consider otherwise untimely or unexhausted claims "when the plaintiff has experienced a continuous practice and policy of discrimination" or when "the plaintiff filed an earlier EEOC charge" and the new allegations are "reasonably related" to the discrimination alleged in the earlier charge (citation and internal quotation marks omitted)). Furthermore, a defendant may be equitably estopped from asserting the failure to exhaust when the defendant engaged in some conduct that hindered the timely filing of the plaintiff's claims. *See, e.g.*, *Lerer*, 2021 WL 1425238, at *5. But none of those exceptions appear relevant here: Kirkwood does not say that exhaustion would have been futile, nor does he say that the defendants somehow prevented him from filing timely claims. And because Kirkwood did not file a charge of discrimination with the EEOC or NYSDHR until well after the time

Kirkwood does not explicitly invoke any such defense.  *See generally* Docket Items 10, 13-14, 18-20.   But because Kirkwood is proceeding *pro se,* the Court gives him every benefit of the doubt and looks for arguments that he might be trying to raise.  *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) ("[T]he submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest." (citation and internal quotation marks omitted)).  And a broad and generous reading of his papers suggests that Kirkwood may be trying to argue that he is entitled to equitable tolling for one or more of three reasons: the COVID-19 pandemic, his learning disability, or the EEOC's conduct.  *See, e.g.*, Docket Item 13 at 2 ("I filed with the EEOC during [COVID and] access to actual office was hard and mostly done over the phone."); *id.* ("In respon[se] to the timely filing charge[] . . . . I am [a] slow learner and everyone just continues to pass the buck."); Docket Item 10 at 2 (Kirkwood's stating that after he submitted his complaint, the EEOC "start[ed] to ignore [him and] he was told keep in mind that the [EEOC] process takes time").

"Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way."  *A.Q.C. ex rel. Castillo v. United States*, 656 F.3d 135, 144 (2d Cir. 2011) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)); *see also Gindi*, 786 F. App'x at 282 (same).  "[E]quitable tolling is considered a drastic remedy applicable only in rare and exceptional circumstances."  *A.Q.C. ex rel.*

---

to do so passed, his claims are not timely under the "continuing violation" or "reasonably related violation" doctrines.  *See Ferguson*, 2023 WL 2462726, at *5.

*Castillo*, 656 F.3d at 144 (alterations, citations, and internal quotation marks omitted).

And Kirkwood has not provided any reason why that drastic remedy applies here.

First, Kirkwood's passing mention of COVID-19 does not suffice to show the sort of rare and exceptional circumstance that might support equitable tolling. *See, e.g.*, *Verne*, 2022 WL 4626533, at *6 ("The COVID-19 pandemic alone is insufficient to warrant equitable tolling without a more specific personal reason."). And while equitable tolling also can apply "where a plaintiff's medical condition or mental impairment prevented [him] from proceeding in a timely fashion," *Zerilli-Edelglass v. N.Y.C. Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003), Kirkwood has not offered a "particularized description" of any "condition [that] adversely affected [his] capacity to function generally or in relationship to the pursuit of [his] rights," *Boos v. Runyon*, 201 F.3d 178, 185 (2d Cir. 2000).

Moreover, Kirkwood's allegations that the EEOC "start[ed] to ignore [him]" after he filed his pre-charge inquiry and that he "was told . . . that the [EEOC] process takes time," Docket Item 10 at 2, do not show that "some extraordinary circumstance" prevented him from filing a timely charge. *See A.Q.C. ex rel. Castillo*, 656 F.3d at 144. In some circumstances, courts have applied equitable tolling "when the EEOC erroneously advised the plaintiff or otherwise erred." *See Jiles*, 217 F. Supp. 3d at 692 (collecting cases); *but see id.* ("[T]he Second Circuit has raised questions as to 'whether the EEOC's actions can be a basis for equitable tolling where the EEOC is not a defendant.'" (quoting *Li-Lan Tsai v. Rockefeller Univ.*, 46 F. App'x 657, 658 (2d Cir. 2002) (summary order)). But Kirkwood does not allege that the EEOC erroneously advised him of anything; in fact, the EEOC notified Kirkwood that he had to do more

than complete Form 290A to pursue his claims. *See, e.g.*, Docket Item 10 at 4 ("If you do not file a charge of discrimination within the time limits, you will lose your rights and the EEOC will not take further action."); *id.* at 5 ("This Pre-Charge Inquiry is not a charge [of discrimination]. If you would like to file a charge of discrimination immediately, contact the EEOC office on the cover letter."). So the cases cited in *Jiles* do not support equitable tolling here. *See Jiles*, 217 F. Supp. 3d at 692 (finding that equitable tolling did not apply where "there are no allegations that the EEOC made any misrepresentations to [the p]laintiff"); *cf. Zerilli-Edelglass*, 333 F.3d at 81 (finding no basis for equitable tolling where the EEOC correctly "inform[ed the plaintiff] that she was required to file a formal complaint within 300 days of the allegedly discriminatory act well within this 300 day period").

Because Kirkwood's claims under Title VII, the ADA, and the ADEA appear to be time barred, and because he has not shown how any equitable defense might change that, his claims are subject to dismissal. Nevertheless, and in light of Kirkwood's *pro se* status, he may amend his complaint or otherwise show why his federal claims are not subject to dismissal for the reasons stated above. *See Shibeshi v. City Univ. of N.Y.*, 531 F. App'x 135, 136 (2d Cir. 2013) (summary order) ("[D]istrict courts should generally not dismiss a *pro se* complaint without granting the plaintiff leave to amend . . . .").

II.     **SUPPLEMENTAL JURISDICTION**

As just noted, Kirkwood's federal claims are subject to dismissal. His remaining claims all arise under state law, and this Court does not have some independent basis for jurisdiction over those claims. *See* Docket Item 1 at 2 (Kirkwood's alleging that the parties are all New York residents).

A "district court[] may decline to exercise supplemental jurisdiction over a claim" if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "Once a district court's discretion is triggered under § 1367(c)(3), it balances the traditional 'values of judicial economy, convenience, fairness, and comity' in deciding whether to exercise jurisdiction." *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). "[I]n the usual case in which all federal[ ]law claims are eliminated before trial, the balance of factors will point toward declining to exercise jurisdiction over the remaining state[ ]law claims." *Id.* (alterations omitted) (quoting *Cohill*, 484 U.S. at 350 n.7).

This case remains at its earliest stages, and it is not clear whether Kirkwood can allege viable federal claims. So judicial economy favors declining to pass on Kirkwood's NYSHRL claims at this stage. And there is nothing to suggest that convenience, fairness, or comity weigh against that conclusion. This Court therefore declines to exercise supplemental jurisdiction over Kirkwood's remaining state law claims, and those claims will be dismissed without prejudice if Kirkwood does not amend his complaint to correct the deficiencies noted above or otherwise demonstrate how this Court can hear his claims.

## **CONCLUSION**

For the reasons stated above, the defendants' motion to dismiss, Docket Item 7, will be granted unless Kirkwood files an amended complaint within 45 days of the date of this order that corrects the deficiencies noted above or otherwise demonstrates how this Court can hear his claims. No later than 30 days after any amended complaint is

15

filed, the defendants may answer, move against, or otherwise respond to the amended complaint.  If Kirkwood does not amend his complaint within 45 days of the date of this order or otherwise demonstrate how this Court can hear his claims, then his complaint will be dismissed without further order and the Clerk of the Court shall close the case.

SO ORDERED.

Dated:  August 3, 2023
        Buffalo, New York

          */s/ Lawrence J. Vilardo*
          LAWRENCE J. VILARDO
          UNITED STATES DISTRICT JUDGE